# Exhibit A

🌐 EFILED IN OFFICE
CLERK OF SUPERIOR COURT
THOMAS COUNTY, GEORGIA

**SUCV2023000454**

AUG 23, 2023 10:36 AM

*Randa D. Wharton*
Randa D. Wharton, Clerk
Thomas County, Georgia

IN THE SUPERIOR COURT OF THOMAS COUNTY
STATE OF GEORGIA

MARCUS GRIGGS, Individually,      §
And On Behalf of the Estate of    §
CORENE GRIGGS, deceased,          §
                                  §
       **Plaintiff**              §    CIVIL ACTION NO.
                                  §
v.                                §
                                  §
LIFE CARE CENTERS of              §
AMERICA INC.  d/b/a               §
CAMELLIA GARDENS of LIFE CARE     §
                                  §
       And                        §
                                  §    **JURY TRIAL DEMANDED**
JOHN DOES (1-5) and ABC           §
CORPORATIONS (1-5)                §
                                  §
       **Defendant**              §

## COMPLAINT

COMES NOW Marcus Griggs, individually, and on behalf of Corene Griggs, by and through the undersigned counsel, and files this Complaint against Defendants Life Care Centers of America d/b/a Camellia Gardens of Life Care, John Does 1-5 and ABC Corporations 1-5 (Defendants) hereby showing the Court the following.

## INTRODUCTION

1.    This is an action for violations of state and federal law and regulations, negligence per se, professional negligence, simple negligence, breach of contract, negligent hiring, retention, training, and supervision, and punitive damages regarding treatment and services provided by Defendants, which proximately caused Corene Griggs to suffer severe and life threatening injuries, illness, pain, and suffering. At all times material to this suit, Corene Griggs received care, treatment, and supervision while residing at Camellia

Gardens of Life Care, located at 804 South Broad Street, Thomasville, Georgia 31792. The Plaintiff in his individual capacity, and on behalf of the estate of Corene Griggs, therefore seeks to recover upon claims arising under tort and contract.

2. This action is timely filed less than two years from the date of all acts of negligence alleged herein. As such, this action is not barred by any statute of limitations or other time related or equitable defense.

## PARTIES

3. Marcus Griggs, as a surviving son of Corene Griggs, brings this action to recover damages. Marcus Griggs, was, at the time of the injuries complained of herein, a resident of Thomas County, GA.

4. The skilled nursing home facility known as Camellia Gardens of Life Care (hereinafter "Camellia") is located at 804 South Broad Street, Thomasville, Georgia 31792 and is owned, operated, and/or managed by Life Care Centers of America, Inc. Camellia was charged with responsibility for the provision of residence, care, treatment and convalescent and rehabilitation services to Corene Griggs. Camellia failed at these responsibilities as outlined in this Complaint and in the attached Affidavit of Fadi Saba, M.D.

5. Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff attaches as Exhibit "1" the expert affidavit of Fabi Saba, M.D. as to the care and treatment provided by the Defendants, which is incorporated by reference as if fully set forth herein, and which sets forth at least one negligent act or omission related to the care and treatment of Corene Griggs by Defendants by and through their employees acting in the course and scope of their employment, which negligent acts or omissions proximately caused or contributed to the

injury and death of Corene Griggs, illustrating the failure by Camellia to furnish and exercise that degree of care required of a hospital and/or skilled nursing facility operator in Georgia.

## JURISDICTION & VENUE

6. Defendant Life Care Centers of America, Inc. d/b/a Camellia Gardens of Life Care is located at 804 South Broad Street, P.O. Box 1959, Thomasville, Georgia 31792, is a for-profit corporation, and is registered to do business in Georgia with its principal place of business at 3570 Keith Street NW, Cleveland, Tennessee 37312-4309. Service upon Defendant Life Care Centers of America, Inc. d/b/a Camellia Gardens of Life Care can be perfected by serving its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7. Jurisdiction is proper in this Court as to Defendants.

8. Venue is proper in this Court as to Defendants.

9. The true names or capacities of Defendants named herein as John Does 1 through 5 and ABC Corporations 1 through 5 are unknown to the Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend the Complaint to show said John Does' and ABC Corporations true names when the same have been ascertained. Plaintiff alleges on information and belief that all John Does and ABC Corporations were negligent as described in detail below and in Exhibit 1 attached hereto. Plaintiff also alleges that John Does were employees, actual agents, or apparent agents of Camellia at all times relevant to this Complaint and were acting incident to and within the course and scope of their employment or agency with Camellia at all times relevant to this Complaint, and that John Does were responsible as medical doctors, medical directors, registered nurses,

physician assistants, licensed practical nurses, or stafff for the care and treatment of Corene Griggs at all times relevant to this Complaint. Plaintiff also alleges that ABC Corporations were owners, operators or managers of Camellia and were responsible for the care and treatment of Corene Griggs at all times relevant to this Complaint.

## FACTS

10. On January 31, 2022, Ms. Griggs was admitted to Camellia.  At the time of her admission, Ms. Griggs had a medical history including Unspecified Hyperlipidemia, Chronic Systolic Congestive Heart Failure, Iron Deficiency Anemia secondary to Blood Loss, Hypertensive Heart Disease, Essential Tremor, Stage 2 Pressure Ulcer of Sacral Region, Overactive Bladder, and Parkinson's Disease.

11. On January 24, 2022, Ms. Griggs was admitted to Archbold Memorial Hospital. She was presented to the emergency department by emergency transportation secondary to a fall that resulted in a femur fracture and right hip.

12. On January 31, 2022, Ms. Griggs was transferred from Archbold Memorial Hospital to Camellia.

13. On February 7, 2022, Ms. Griggs was noted to have a Braden Scale score of 12, denoting a high risk for developing pressure wounds.

14. On February 8, 2022, the Stage 2 pressure wound to the right buttock that Ms. Griggs had upon admission to Camellia measured 2x0.1x0.1cm with no exudate and no signs of infection.

15. On February 11, 2022, it was noted that Ms. Griggs had actual impairment to skin integrity of the right outer ankle callous and right lower leg. Also, Ms.

Griggs was noted to have a pressure ulcer to the coccyx and lower leg.

16. On February 13, 2022, Ms. Griggs was found to have a poor appetite.

17. On February 14, 2022, Ms. Griggs was admitted to Archbold Medical Center having suffered an acute pulmonary embolism.

18. On February 17, 2022, Ms. Griggs was admitted to Hospice of Southwest Georgia.

19. On March 28, 2022, it was observed that Ms. Griggs had a small open area to the left gluteal fold. Also, the hospice note found that Ms. Griggs had a new abrasion to her buttock crease.

20. On April 25, 2022, Ms. Griggs was observed to have an edema of her bilateral lower extremities, with 4 plus pitting.

21. On April 27, 2022, it was found that Ms. Griggs had an ongoing pitting edema to her right foot and ankle. Also, it was found that Ms. Griggs had lost 1cm in arm circumference over the past month.

22. On June 6, 2022, an open area to Ms. Griggs' right side lower back area was found to be healed.

23. On July 21, 2022, a wound note observed a shallow moist area to Ms. Griggs' sacrum, with discoloration of skin from old, healed areas.

24. On August 5, 2022, a wound note stated there was a change in treatment plan to Ms. Griggs' right inner leg wound. Slough was observed in the wound bed with odor.

25. On August 15, 2022, a hospice skin note stated that Ms. Griggs had an open

wound on her right medial lower leg with tan slough to wound bed center, undermining noted and measured 3.5x1.5x2c.m. This wound began as an abrasion but worsened. Tunneling was 3c.m. and moderate, purulent drainage was present.

26. On August 19, 2022, it was noted that Ms. Griggs had multiple pressure ulcers.

27. On September 4, 2022, it was noted that Ms. Griggs had a wound to her coccyx, with a red wound bed with peri-wound intact, white in color.

28. On November 22, 2022, a wound note found that Ms. Griggs had a worsening wound to her left hip, and that the wound was larger with softer tissue and an odor.

29. On December 5, 2022, Ms. Griggs was found to be dependent upon the nursing staff for transfer, eating, toileting, locomotion, hygiene, and bathing. Also, it was found that she did not ambulate.

30. On December 10, 2022, Ms. Griggs died, with her cause of death being cardiopulmonary arrest with underlying cause of secondary to complications of right femur fracture.

## COUNT ONE

## PROFESSIONAL NEGLIGENCE AGAINST ALL DEFENDANTS

31. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein. Camellia was negligent and failed to exercise that degree of care required of the hospital and long-term care and skilled nursing home profession in general under similar conditions and like circumstances. To the extent that this Count may be considered a medical malpractice action as defined in O.C.G.A. § 9- 11-8 or O.C.G.A. § 9-3-70, see the Affidavit and CV of Fadi Saba, MD, attached hereto as Exhibit "1" to pursuant to O.C.G.A. § 9-11-9. l(a), to the extent that this statute may apply, if at all, to this action, and which Affidavit is incorporated herein by referenceas if fully set forth herein.

32. The Affidavit specifies at least one negligent act or omission on the part of Camellia and/or its staff, and the factual basis for such negligent act or omission that caused injury to Corene Griggs. The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiff reserves the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflects a departure from the requisite standard of care by law.

33. Pursuant to his education, training and experience, Dr. Saba is familiar with the guidelines and regulations of the medical care industry Skilled Nursing and Long-Term Care Facilities including the requirement to discharge patients from their facility when the acuity level necessitates skilled nursing care.

34. Pursuant to Dr. Saba's education, training and experience, he is familiar with the proper care of patients who had medical conditions similar to Corene Griggs, including but not

limited to abnormalities of gait and mobility, and generalized muscle weakness.

35. Pursuant to Dr. Saba's education, training and experience, he is fully aware of the circumstances under which a resident is in need of the services of a physician for care and prevention and treatment of pressure injuries.

36. As a result of Dr. Saba's education, training and experience outlined above and described more in his attached CV, he is well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects of hospital and nursing care, both for nursing care that occurs at a nursing home, assisted living facility and/or any type of long-term care setting.

37. The standard of care for staff in hospitals and the long-term care setting requires that the staff prepare proper assessments and care plans for the identification of residents at risk for skin breakdown and, and to provide proper care for the prevention and treatment of the same.

38. The standard of care for staff in hospitals and the long- term care setting requires that the staff provide appropriate monitoring and update care plans when the needs of a resident has changed substantially.

39. The standard of care for staff in hospitals and the long-term care setting requires that the staff recognize significant changes in a resident and notify the physician and family regarding the changes as well as initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

40. The standard of care for staff in hospitals and skilled nursing and long-term care settings requires that staff turn and reposition residents at a minimum of every two hours to relieve pressure areas and in so doing prevent the breakdown of vulnerable skin for

residents such as Corene Griggs who were at a high risk for skin breakdown.

41. The standard of care for staff in hospitals and skilled nursing and long-term care settings requires that they accurately assess an elderly resident's risk for skin breakdown.

42. The standard of care for staff in hospitals and the long-term care setting requires that the staff obtain immediate emergency or hospital care when the resident's condition requires it.

43. Camellia owed Corene Griggs duties of care, including but not limited to a duty to exercise that degree of skill and care ordinarily employed by the medical profession generally under similar conditions and like surrounding circumstances, a duty of ordinary care, and a duty not to negligently injure Corene Griggs.

44. Notwithstanding the duty owed to Corene Griggs by Camellia as described above, Camellia was negligent and failed to exercise that degree of care, skill and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances. The negligence of Camellia included, but was not limited to, the following:

    i.    Failure to institute an appropriate care plan for the prevention of pressure injuries;

    ii.    Failure to properly implement care and services to heal pre-existing areas of skin breakdown;

    iii.    Failure to provide adequate measures to prevent development of pressure injuries;

    iv.    Failure to assess, recognize, treat and document a significant condition (significant pressure wounds);

    v.    Failure to monitor and document a significant change in condition;

vi.    Failure to exercise appropriate interventions to mitigate malnutrition;

vii.    Failure to obtain appropriate consultations;

viii.    Failure to inform the physician and family of a significant condition/change in condition;

ix.    Failure to document care;

x.    Failure to ensure the patient's physical and mental well-being.

45. Camellia is vicariously liability for the negligent acts and omissions of all persons or entities under the control of Camellia either direct or indirect, including its respective employees, agents, and consultants, which negligent acts or omissions proximately caused or contributed to the injury and death of Corene Griggs, illustrating Camellia's failure to furnish and exercise that degree of skill and care required of hospitals, nurses, skilled nursing facilities, and the medical profession in general.

46. John Does owed Corene Griggs duties of care, including but not limited to a duty to exercise that degree of skill and care ordinarily employed by the medical profession generally under similar conditions and like surrounding circumstances, a duty of ordinary care, and a duty not to negligently injure Corene Griggs. John Does departed from the standard of care and were negligent in their care and treatment of Corene Griggs.

47. As a proximate result of the professional negligence of the Defendants as described above, Plaintiff Marcus Griggs, as surviving son of Corene Griggs, deceased, demands judgment for the full value of the life of Corene Griggs in an amount in excess of $10,000.

## COUNT TWO
## SIMPLE NEGLIGENCE

48. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

49. Defendant Camellia breached the duty of ordinary care they owed to Corene Griggs by negligently failing to render to Corene Griggs the care she required during her stay at Camellia by negligently failing to exercise reasonable care to keep her safe from harm and to avoid injury to her person, and in other ways to be proven at trial, and thereby and caused her to suffer injuries, damages, and death as a direct and proximate result of Camellia's acts and omissions of ordinary negligence and simple negligence.

50. Camellia breached the duty of ordinary care it owed to Corene Griggs by failing to care for Corene Griggs and in other ways to be proven at trial, and thereby caused Corene Griggs to suffer several serious pressure wounds.

51. As a proximate result of the simple negligence of Camellia, Plaintiff has suffered general damages, special damages, and compensatory damages, including but not limited to physical and mental pain and suffering, medical costs, medical expenses, medical bills, funeral costs and damages resulting from the injuries of Corene Griggs.

## COUNT THREE
## VICARIOUS LIABILITY UNDER THE DOCTRINE OF RESPONDENT SUPERIOR AND ACTUAL OR APPARENT AGENCY

52. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

53. At all times relevant to this Complaint, John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia were the actual or apparent agents of Camellia.

COMPLAINT

54. Under the doctrine of *respondeat superior*, vicarious liability, actual agency and/or apparent agency, Camellia is liable for the acts and omissions of their employees and agents constituting ordinary or simple negligence, including but not limited to John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia, and Camellia is liable for the acts and omissions of its specific employees and agents constituting ordinary or simple negligence.

55. Camellia is liable for the professionally negligent acts and omissions of John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia under the doctrine of *respondeat superior*, actual agency, and/or apparent agency.

56. The professionally negligent acts and omissions of the employees and agents of Defendants including but not limited to John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia, are described in detail above in this Complaint, aswell as in Exhibit "1" to this Complaint, which exhibit is hereby incorporated by reference as if fully set forth herein to meet the requirements of O.C.G.A.§9-11-9.1.

57. All professionally negligent acts and omissions and all ordinarily negligent acts and omissions of Camellia and their employees, agents, and staff, including but not limited to John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia operated together and concurrently and proximately brought about the injuries to Corene Griggs as described above.

COMPLAINT

58. Camellia is vicariously liable for its individual employee and agents' negligent acts and omissions, including but not limited to John Does 1-5 and the nurses, certified nurse aids and other persons who provided care and treatment to Corene Griggs while she was a resident at Camellia as applicable, and for each individual officer, director, employee, agent and servants' negligent acts and omissions, and the resultant injuries, under the doctrines of *respondeat superior*, vicarious liability, actual agency, and apparent or implied agency.

59. As a proximate result of the negligence described herein, Plaintiff has suffered general damages, special damages, and compensatory damages, including but not limited to physical and mental pain and suffering, medical costs, medical expenses, medical bills, funeral costs and damages resulting from the injuries to Corene Griggs, for which Defendants are liable.

## **COUNT FOUR**
## **NEGLIGENCE PER SE BASED UPON VIOLATION OF REQUIREMENTS FORLONG-TERM CARE FACILITIES AT 42 CFR §483.1 et seq.**

60. Plaintiff re-alleges and incorporate by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

61. Upon information and belief, Camellia is a licensed and certified long- term patient care and convalescence facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program and receives funding under the Medicare and Medicaid programs.

62. The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA §§ 1395i-3 and 1396r related to the care, treatment and services provided to residents of skilled nursing facilities

participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

i. 42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence;

ii. 42 CFR §483.13(c) requires the facility to implement protocols to protect the resident from neglect;

iii. 42 CFR §483.13(c)(2) requires that all instances of patient neglect be reported to the facility administrator and other officials in accordance with state law;

iv. 42 CFR §483.13.(c)(3) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients;

v. 42 CFR §483.13.(c)(4) requires that results of neglect investigation be reported to the administrator and appropriate state authorities;

vi. 42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life;

vii. 42 CFR §483.15.(e)(l) requires that each resident be provided services in the facility to accommodate their individual needs;

viii. 42 CFR §483.20.(b) and (g) require the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident'sgeneral health and physical functioning;

ix. 42 CFR §483.20.(k)(l) requires that the facility prepare an accurate

comprehensivecare plan that addresses the patient's medical and nursing needs;

x.  42 CFR §483.20.(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons;

xi.  42 CFR §483.25. requires the facility to provide services to attain and maintain thehighest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan;

xii.  42 CFR §483.25.(a)(3) requires the facility to provide a resident who is unable tocarry out the activities of daily living necessary services to maintain good nutrition, hygiene, grooming and oral hygiene;

xiii.  42 CFR §483.30. requires the facility to maintain an adequate nursing staff;

xiv.  42 CFR §483.75. requires that the facility be administered in such a way as to useits resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident;

xv.  42 CFR §483.75. requires properly trained, qualified and competent staff;

xvi.  42 CFR §483.75.(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services; and

xvii.  42 CFR §483.75(k)(l) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are completeand accurate.

COMPLAINT                                                          Page 15 of 29

63. As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, Camellia is subject to the above federal regulations for the provision of care, treatment and services to residents of the facility.

64. Camellia's violation of the above regulations of the U.S. Department of Health and Human Services include but are not limited to the following acts and omissions, and other acts and omissions in violation of Federal regulations that will be proven at trial:

    i.    Camellia failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of Corene Griggs.

    ii.    Camellia failed to implement and follow protocols to protect Corene Griggs from neglect;

    iii.    Camellia failed to operate and provide services to Corene Griggs in compliance with law and acceptable professional standards and principles that apply to professionals providing said services;

    iv.    Camellia failed to provide or arrange services for Corene Griggs that met professional standards of quality;

    v.    Camellia failed to maintain an adequate nursing staff to provide for Corene Griggs' needs;

    vi.    Camellia failed to provide properly trained, qualified and competent staff to care for Corene Griggs;

    vii.    Camellia failed to maintain complete and accurate clinical records related to the care and treatment of Corene Griggs in accordance with accepted

professional standards and practices;

    viii.   Camellia failed to protect Corene Griggs from neglect;

    ix.   Camellia failed in their duty to report all instances of Corene Griggs' neglect to the facility administrator and appropriate state authorities;

    x.   Camellia failed to report results of any neglect investigation to the Administrator and appropriate state authorities;

    xi.   Camellia failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Corene Griggs needed; and

    xii.   Camellia failed to follow physician's orders with respect to the care and treatment that Corene Griggs needed.

b.   Camellia's acts and omissions constituting violations of the above-referenced federal regulations at 42 CFR §483.1 et seq. constitute negligence per se or negligence as a matter of law pursuant to O.C.G.A. §51-1-6.

c.   Camellia's failure to comply with the above federal mandates led directly to the serious injury, pain, and suffering of Corene Griggs.

d.   As a proximate result of Camellia's negligence *per se,* Camellia is liable to Corene Griggs for all damages recoverable, including all special and general damages sustained by Corene Griggs.

## COUNT FIVE
## GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT O.C.G.A. § 31-8-100 et seq.

65. Plaintiff re-alleges and incorporate by reference each of the allegations and numbered

COMPLAINT

paragraphs set forth above as if fully set forth herein.

66. Upon information and belief, Camellia is a "long-term care facility" as that term is defined under O.C.G.A. §31-8-102(3).

67. The State of Georgia has promulgated the Bill of Rights for Residents of Long-term Care Facilities at O.C.G.A. §31-8-100 et seq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state. In particular, O.C.G.A. §31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this complaint), and with respect for the resident's personal dignity, among other requirements.

68. Pursuant to its authority granted by statute, the Georgia Department of Human Resources has promulgated a number of regulations for the provision of care, treatment and services to residents of long-term care facilities. In particular, GA ADC 290-5-39-07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan. The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

69. Camellia violated the provisions of the Georgia Bill of Rights for Residents of Long-Term Care Facilities and the regulations of the Georgia Department of Human Resources identified above in all of the acts and omissions that are described in this Complaint for Damages. The acts and omissions constituting violations of the Georgia Bill of Rights for Residents of Long-Term Care Facilities and the regulations of the Georgia DHR include

but are not limited to the following, as well as other violations of Georgia statutes that will
be proven at trial:

    i.    Camellia failed to administer the nursing facility in such a way as to use
its resources effectively and efficiently to maintain the highest
practicable physical, mental and psychosocial wellbeing of Corene
Griggs;

    ii.    Camellia failed to implement protocols to protect Corene Griggs from
neglect;

    iii.    Camellia failed to operate and provide services to Corene Griggs in
compliance with law and acceptable professional standards and principles
that apply to professionals providing said services;

    iv.    Camellia failed to provide or arrange services for Corene Griggs that met
professional standards of quality;

    v.    Camellia failed to maintain an adequate nursing staff to provide for
Corene Griggs' needs;

    vi.    Camelia failed to provide properly trained, qualified and competent staff
to care for Corene Griggs;

    vii.    Camellia failed to maintain complete and accurate clinical records related
to the care and treatment of Corene Griggs in accordance with accepted
professional standards and practices;

    viii.    Camellia failed consistently to make any effort to protect Corene Griggs
from neglect;

     ix.    Camellia failed in its duty to report all instances of Corene Griggs' neglect to the appropriate state authorities;

     x.    Camellia failed to report results of any neglect investigation to the appropriate state authorities;

     xi.    Camellia failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Corene Griggs needed;

     xii.    Camellia failed to follow physician's orders with respect to the care and treatment that Corene Griggs needed; and

     xiii.    Camellia failed to maintain a comprehensive and accurate assessment of Corene Griggs' medical needs.

70. Pursuant to OCGA §31-8-126(a), Plaintiff has a cause of action for damages against Camellia as a result of said Defendants' violations of the rights granted under the Georgia Bill of Rights for Residents of Long Term Care Facilities such as those identified under O.C.G.A. §31-8- 108(a).

71. Additionally, Camellia's violations of the regulations of the Georgia Department of Human Resources set out above constitute negligence per se or negligence as a matter of law pursuant to O.C.G.A. §51-1-6.

72. Camellia's violations of the rights of Corene Griggs in violation of the Georgia Bill of Rights for Residents of Long Term-Care Facilities and the regulations of the Georgia DHR set out above lead directly to the serious injury and terrible pain and suffering of Corene Griggs.

73. As a proximate result of the aforementioned violations of the Bill of Rights, Plaintiff has suffered general damages, special damages, and compensatory damages, including but

not limited to physical and mental pain and suffering, medical costs, medical expenses, medical bills, damages resulting serious injuries to Corene Griggs and Plaintiff is entitled to an award of damages against Camellia.

## COUNT SIX
## STATUTORY REMEDIES FOR VIOLATION OF FEDERAL AND STATE STATUTES AND REGULATIONS IN THE OPERATION OF A NURSING HOME

74. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

75. Camellia is a "nursing home" as that term is defined under O.C.G.A. § 31-71(1)(B).

76. Nursing homes in Georgia must be licensed by the DHR/DCH and are required to comply with all applicable state and federal laws governing the administration of long term care facilities, including, but not limited to the Bill of Rights for Long Term Care Facilities andits rules and regulations.

77. Pursuant to O.C.G.A. §§ 31-8-100 through 31-8-127, residents of nursing homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Human Resources at GA ADC 111-8-50, et seq.

78. Among the regulations promulgated by the Georgia Department of Human Resources forthe operation of nursing homes is GA ADC 111-8-50-.02 and 111-8-50-.07 which providethat each resident of a nursing home must receive care and services which shall be adequate, appropriate and in compliance with applicable federal and state law and regulations.

79. The State of Georgia has promulgated the Bill of Rights for Residents of Long-Term

Care Facilities at O.C.G.A. § 31-8-100 et eq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state, including personal care homes.

80. Camellia's conduct which is described in detail above constitutes numerous individual violations of the Georgia Bill of Rights for Residents of Long-Term Care Facilities at O.C.G.A. § 31- 8-100 et seq., the regulations of the Georgia Department of Human Resources at GA ADC § 111-8- 50 et seq. and the regulations of the U.S. Department of Health and Human Services at Title 42 of the Code of Federal Regulations.

81. Camellia is liable to Plaintiff for all damages recoverable.

<u>**COUNT SEVEN**</u>
<u>**GENERAL**</u>
<u>**NEGLIGENCE**</u>

82. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

83. Corene Griggs entered into a contract for the provision of long-term residence, care, treatment and services with Camellia, and pursuant to their agreement Camellia had a duty to exercise ordinary care in the provision of that care, treatment, and services to Corene Griggs.  Camellia failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Corene Griggs, and she sustained serious injury, great pain and suffering, and contribution to death as a result.

84. Upon information and belief, Camellia failed to establish and implement policies and procedures designed to provide appropriate care, treatment and services to Camellia residents including Corene Griggs.

85. Upon information and belief, Camellia failed to properly prepare their specific facility

budget so as to use its resources effectively and efficiently to maintain appropriate care, treatment and services to its residents including Corene Griggs.

86. Upon information and belief, Camellia failed to implement policies, practices and protocols to protect residents, including Corene Griggs from neglect.

87. Camellia failed to operate and provide services to Corene Griggs in compliance with acceptable professional standards and principles that apply to professionals providing said services.

88. Upon information and belief, Camellia failed to maintain an adequate nursing and non-professional staff to provide for Corene Griggs' needs.

89. Camellia failed to provide properly trained, qualified and competent staff to care for Corene Griggs.

90. Upon information and belief, Camellia failed to properly train and supervise their specific facility staff that were responsible for the provision of care, treatment and services to Corene Griggs.

91. Camellia each failed to properly monitor and chart Corene Griggs' condition and the course of care provided to address his medical conditions.

92. Camellia's staff were each negligent in a number of other ways identified herein and to be further demonstrated by the evidence.

93. As a direct and proximate result of each one of the above-described negligent acts and omissions by Camellia, Corene Griggs suffered grave injury, and suffered pain and suffering.

94. Many of the acts and omissions of Camellia described herein are ministerial in nature

and constitute simple negligence for which Camellia is each liable to Plaintiff.

95. As a result of the foregoing acts and omissions and the resultant injuries, pain and suffering, Plaintiff on behalf of the estate of Corene Griggs is entitled to recover from Camellia as set out below.

## COUNT EIGHT
## BREACH OF CONTRACT

96. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

97. Corene Griggs entered into a contract for the provision of medical care, long term nursing care, treatment, and services with Camellia in this action, and pursuant to that agreement, Camellia had a duty to exercise ordinary care in the provision of care, treatment and services to Corene Griggs. Camellia failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Corene Griggs, and she sustained serious illness, injury, pain, and suffering as a result.

98. In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment and services outlined herein, Camellia failed to provide the services that they promised to provide pursuant to the contract for services entered between Camellia and Corene Griggs. Camellia therefore each breached the contract for services as set out herein.

99. As a result of the foregoing, Plaintiff Marcus Griggs is entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising therefrom. Camellia agreed to provide skilled nursing and healthcare services to Corene Griggs, and pursuant to that agreement Camellia had a duty to exercise ordinary care in

the provision of care, treatment and services to Corene Griggs. Camellia failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Corene Griggs as described above, and she sustained serious illness, pain, and suffering as a result.

## COUNT NINE

### FAILURE TO PROVIDE SUFFICIENT AND PROPERLY TRAINED STAFF

100. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

101. Camellia had a duty to exercise ordinary and reasonable care in providing sufficient staffing and properly trained staff at their specific facility.

102. Camellia was chronically understaffed, which put patients at the facility at risk and in danger. In addition, the staff at Camellia's specific facility were inadequately and improperly trained.

103. Camellia each breached their duty to exercise reasonable and ordinary care in providing sufficient and quality staffing.

104. Camellia failed to provide sufficient staffing at Camellia's specific facility and caused the facility to be chronically understaffed and failed to properly train said staff. The acts and omissions of Camellia proximately caused Corene Griggs serious injury, pain, and suffering and death.

105. As a further result of the failure of Camellia to provide sufficient staff at Camellia's specific facility and failure to properly train its staff, Plaintiff Marcus Griggs, individually, is entitled to recover damages for the pain and mental anguish, death, suffering, medical

expenses, and funeral and burial expenses.


## COUNT TEN

## NEGLIGENT HIRING, RETENTION, MANAGEMENT AND SUPERVISION

106. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

107. Camellia employed the nurses, certified nurse aids and other caretakers who were responsible for Corene Griggs' care during her residency at Camellia and at all times relevant to this Complaint.

108. The nurses, certified nurse aids and other caretakers who were responsible for Corene Griggs' care during his residency at Camellia and at all times relevant to this Complaint were acting incident to and in the course and scope of their employment with Camellia at all times relevant to this Complaint.

109. Upon information and belief, Camellia breached a duty and was negligent in hiring unqualified staff, in failing to hire sufficient numbers of staff to handle the workload at the Camellia facility, in failing to adequately train and supervise and manage the staff at the Camellia facility, and in retaining certain staff. As a direct and proximate result of such negligent failures, Corene Griggs suffered personal injuries, and damages.

110. As a proximate result of Camellia's negligent hiring, retention, supervision, and training of their employees as described above, Plaintiff has suffered general damages, special damages, and compensatory damages, including but not limited to physical and mental pain and suffering, medical costs, medical expenses, medical bills, and damages

resulting from the wrongful death of Corene Griggs.

## COUNT ELEVEN

## PUNITIVE DAMAGES

111. Plaintiff re-alleges and incorporates by reference each of the allegations and numbered paragraphs set forth above as if fully set forth herein.

112. In this tort action, there exists proof by clear and convincing evidence that the actions of each Camellia as described above and as described in Exhibit 1 attached hereto showed willful misconduct, wantonness, and the entire want of care in failing to prevent and treat Corene Griggs from suffering debilitating pressure wounds which would raise the presumption of conscious indifference to the consequences, so as to entitle Plaintiff to recover punitive damages against Camellia in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Camellia from repeating its conduct.

WHEREFORE, Plaintiff prays:

    i.    That Summons and a copy of this Complaint be served on Camellia;

    ii.    That judgment be entered against Camellia in amounts in excess of $10,000 for all special damages, pain, and suffering of Corene Griggs;

    iii.    That judgment be granted in favor of Plaintiff for exemplary/punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined by the enlightened conscience of a fair and impartial jury;

COMPLAINT

iv.    That Plaintiff have a TRIAL BY JURY; and

v.    That Plaintiff be granted any and all further relief as is just and proper.

Respectfully Submitted this 22th Day of August, 2023,

*/s/: Jacob Runyon*
Jacob Runyon
State Bar No. 528373
Smith Clinesmith LLP
325 N. St. Paul 29th Floor
Dallas, TX 75201
jacob@fightingelderabuse.com
Tel. 214-953-1900
**ATTORNEY FOR PLAINTIFF**

EXHIBIT A

STATE OF FLORIDA §

COUNTY OF PINELLAS §

### Affidavit of Merit of Dr. Fadi Saba, M.D.
### Re: Corene Griggs
### Date of Birth: 03/01/1936

I am a licensed physician for the State of Florida and have attached a true and correct copy of my Curriculum Vitae, which lists my expert qualifications as follows:

1.      I am a physician licensed to practice in the state of Florida and devote at least 75% of my professional time to the active clinical practice of medicine. At the time of review of the records in this case, I was actively practicing medicine. My license has not been revoked or suspended in the past years in any state. I am board certified in Internal Medicine and have specialized knowledge, skill, experience, training and education and practice in the fields or geriatric, nursing home, and assisted living care.

2.      I am also familiar with the applicable standards of care in the treatment of patients like Corene Griggs. I have cared for many patients similar to Ms. Griggs in hospital and nursing home settings over the last several decades. In particular, I have extensive experience in treatment of patients who have a medical history that includes pressure ulcers, Parkinson's, congestive heart failure. I have treated residents and managed resident who have been diagnosed with the injuries complained of in this case. I am knowledgeable of the standards of care of assisted living facilities, having worked with nursing staff in the coordination of care for residents of such facilities. A true and accurate copy of my curriculum vitae containing my name, address, qualifications and list of publications is attached hereto as Exhibit A.

3. In this case, I have reviewed the following:

      a. Medical records of Corene Griggs from Camellia Gardens of Life Center;
      b. Medical records of Corene Griggs from Archbold Memorial Hospital;
      c. Medical records of Corene Griggs from Hospice of Southwest Georgia;
      d. Photographs and video of Corene Griggs' injuries;
      e. Death certificate of Corene Griggs

4.   The pertinent facts are as follows: Corene Griggs was admitted to Camellia Gardens of Life Center on 1/31/2022. At the time of her admission to Camellia Gardens of Life Centers, Ms. Griggs had a medical history that included: unspecified hyperlipidemia, chronic systolic congestive heart failure, iron deficiency anemia secondary to blood loss, hypertensive heart disease with heart failure, essential tremor, stage 2 pressure ulcer of sacral region, overactive bladder, Parkinson's disease, displaced oblique fracture of shaft of right femur subsequent encounter for closed fracture with routine healing, aftercare following explanation of hip joint prosthesis.

5.   On 3/28/2022, Ms. Griggs had a new abrasion on the buttock crease where an insert pad laid against the skin. On 8/5/2022, the pressure wound to the right inner leg was noted to have odorous slough in the wound bed. On 8/15/2022, the right medial lower leg wound started as an "abrasion" but became a stage 2 pressure wound that measures 3.5x1.5x2cm, has tunneling at 12 o'clock with depth of 3cm and moderate purulent drainage. On 11/22/2022, Ms. Griggs' wound to her left hip grew in size and began emitting an odor. On 12/10/2022, Ms. Griggs passed away, with cause of death being cardiopulmonary arrest and secondary cause complications of right femur fracture.
Breaches in Standard of Care

6. As an assisted living facility, the standard of care for Camellia Gardens of Life Center required that they provide a care and treatment level that a reasonable, prudent similar facility and staff would provide under the same or similar circumstances. Camellia Gardens of Life Center, its managers and operators and nursing staff breached the standard of care in the following manner:

7. Nursing staff of Camellia Gardens of Life Center are required to prevent the development of pressure sores, and if a resident has pressure sores, provide the necessary treatment and services to promote healing, prevent infection, and prevent new sores from developing. Here, Ms. Griggs was admitted to the Camellia Gardens of Life Center with a known sacral pressure wound, right lower leg and a closed wound on the left hip. While in the care of Camellia Gardens of Life Center, Ms. Griggs' wounds to her right inner leg worsened to a depth of 3 cm. She also developed a new abrasion to the fold of her buttock.

8. The standard of care for assisted living facilities requires that they do not retain residents whose needs are beyond that which the assisted living can provide. In this case, Ms. Griggs's needed care was beyond that which Camellia Gardens of Life Center could provide. From her admission to hospice care with an increased number of skin issues and wounds worsening, it is evident, to a reasonable degree of medical probability, that Ms. Griggs experienced increased suffering. Ms. Griggs had substantial risk of wound development and skin breakdown, consistent with the Braden score of 12, as well as the existence of multiple pressure wounds upon her admission. These wounds, as well as new wound development, caused Ms. Griggs increased pain and suffering prior to her death.

9. It is my opinion that there is merit to filing suit against Camellia Gardens of Life Center, it's managers and operators for the injuries to Corene Griggs.

I declare under penalty of perjury that the above statements are true and correct pursuant to the laws of the State of Georgia.

_____
Fadi Saba, MD.

Sworn to and subscribed in my presence this ___FIRST___ day of August 2023.

_____
Notary Public

ELIE AYYUB
Notary Public - State of Florida
Commission # HH 296104
My Comm. Expires Oct 9, 2026
Bonded through National Notary Assn.

# *Curriculum Vitae*

## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

*Dr. Saba is the founder and CEO and an active practicing physician for Professional Health Care of Pinellas, LLC; a multi-specialty group in St. Petersburg, Florida, since 1997.*

*Professional Health Care of Pinellas is a multispecialty group that provides healthcare in downtown St. Petersburg, Florida.*

*Dr. Saba has extensive experience in acute hospitals, long-term acute care (LTAC) hospitals, assisted living facilities, nursing homes, and ambulatory care settings.*

## Personal:

| | |
|---|---|
| Citizenship: | United States of America |
| Fla. Medical License Number: | ME71448 |
| DEA Number: | BS4923656 |
| Languages Spoken: | Speaks, reads and writes: English, French, Arabic |

# *Curriculum Vitae*
## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

## *Areas of expertise:*

1. Nursing Home/Post Acute Care
2. Hospital Standard of Care
3. Long-term Acute Care (LTAC)
4. Assisted Living Facilities
5. Cause of death related to above

## *Forensic expertise:*

I have testified for both Plaintiff and Defense since 2015 regarding geriatric issues, falls, complicated medical cases, hospital and nursing home care.

## *Education:*

| | |
|---|---|
| July 1995- June 1996 | PGY3 and Chief Resident, Good Samaritan Hospital |
| | (John Hopkins System) Department of Internal Medicine |
| July 1994- June 1995 | PGY2, Good Samaritan Hospital of Maryland |
| | (John Hopkins System) Department of Internal Medicine |
| July 1993- June 1994 | PGY1, Good Samaritan Hospital of Maryland |
| | (John Hopkins System) Department of Internal Medicine |

## *Board Certifications:*

Diplomat of the American Board of Internal Medicine

Previously board certified in hospice and palliative care

# *Curriculum Vitae*

## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

## *Honors:*

| | |
|---|---|
| June 1996 | Excellence Award for Dedicated Teaching and Outstanding Leadership |
| | Good Samaritan Hospital, Johns Hopkins University, Department of Internal Medicine |
| June 1996 | Physician of the Year |
| | Good Samaritan Hospital, Johns Hopkins University |
| October 1995 | Found Member and Vice Chairman, |
| | The Chief Residents Association of Baltimore |

## *Work Experience:*

| | |
|---|---|
| April 1997- Present | Professional Health Care of Pinellas, LLC |
| | St. Petersburg, Florida: CEO of Multi-Specialty Group |

## *Skilled Nursing Facility Experience:*

| | | |
|---|---|---|
| 2011- Present | Medical Director | Pinellas Pointe Health & Rehab Center |
| 2014- Present | Medical Director | Clearwater Center & Rehabilitation |
| 2006- Present | Medical Director | BayPointe Nursing Pavilion |
| 2001-2013 | Medical Director | Carrington Place Convalescent Center |
| May 2000- 2012 | Medical Director | College Harbor/The Allegro |
| 1998- Present | Medical Director | South Heritage Health & Rehab Center |
| Apr 2018- Present | Medical Director | Consulate HealthCare of Safety Harbor |
| Oct 2018- Present | Medical Director | Stratford Court of Palm Harbor |
| Oct 2018- Present | Assoc. Medical Director | Oak Manor Nursing Home |
| Oct 2018- Present | Assoc. Medical Director | Addington Place at College Harbor |

# *Curriculum Vitae*

## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713

Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081

fsaba@excellent-experts.com

### *Acute Short Term Hospital Experience:*

| | |
|---|---|
| 2014- Present | Quality Committee Member, |
| | St. Anthony's Hospital (Bay Care Health System) |
| 2006- Present | Medical Director, Hospitalist Services; |
| | St. Anthony's Hospital (Bay Care Health System) |
| 2010- Present | Medical Director, Kindred Hospital- St. Petersburg, Florida |
| | Chair, QA Committee, Kindred Hospital- St. Petersburg, Florida |
| 2007- 2011 | Chief of Staff, Edward White Hospital- St. Petersburg, Florida |
| | An HCA Hospital |
| 2004- 2007 | Chief of Medicine, Edward White Hospital |
| | St. Petersburg, FL; An HCA Hospital |
| 1999- 2014 | QA Committee, Internal Medicine Department |
| | Bayfront Medical Center, St. Petersburg, Florida |
| 1998- 2006 | Member, Credentialing Committee |
| | St. Anthony's Hospital, St. Petersburg, Florida |
| 1998- Present | Teaching Faculty, Northside Hospital and Heart Institute |
| | Pinellas Park, Florida |
| 1998- 1999 | Member, Pharmacy & Therapeutics Committee, |
| | Northside Hospital and Heart Institute |

### *LTAC Experience*

(Long Term Acute Care Hospitals)

| | |
|---|---|
| Dec 2001- 2007 | Chief of Staff, Kindred Hospital, St. Petersburg, Florida |
| | (A LTAC facility) |
| Jan 2000- Dec 2001 | Vice Chief of Staff, Kindred Hospital |

## *Curriculum Vitae*
## F.E. Saba, M.D.
1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

### Corporation Facilities:

| | |
|---|---|
| 2012- Dec 2018 | Board Member, All Care, ACO |
| | (Accountable Care Organization) |
| 2010- 2018 | Charter Member & Board Member, |
| | Bay Care Partners; CIN |
| | (Clinically Integrated Network) |
| 2010- Present | Corporate Medical Director, Traditions Management |
| | Skilled Nursing Facility Management Company |
| 2000- 2015 | Trustee Board Member, Edward White Hospital |
| | St. Petersburg, Florida |
| 1998- 2000 | Chart Reviewer, Florida Medical Quality Assurance |

### Psychiatric Hospital:

| | |
|---|---|
| July 2001- Present | Consulting Physician, Windmoor Psychiatric Hospital |
| | Clearwater, Florida |

### Acute Rehab Hospital:

| | |
|---|---|
| August 2015- Present | One of 3 groups at Healthsouth/Encompass Rehab |
| 2016- Present | Member, Pharmacy & Therapeutics Committee |

# *Curriculum Vitae*
## F.E. Saba, M.D.
1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

## *Assisted Living Facility Experience:*

| | | |
|---|---|---|
| 2000- 2007 | Medical Director | Bon-Secours Place |
| | | St. Petersburg, Florida |
| 2012- Present | Medical Director | Magnolia Gardens |
| | | Pinellas Park, Florida |
| 2007- Present | Medical Director | Patrick Manor |
| | | St. Petersburg, Florida |

## *Retirement Community Experience:*

| | |
|---|---|
| 1997- Present | Princess Marth Retirement Community |
| | St. Petersburg, Florida |
| 1998- Present | Martin Luther King Foundation HUD Housing |
| | St. Petersburg, Florida |
| 2007- Present | Sunrise Community |
| | St. Petersburg, Florida |
| 2017- Present | Sunrise Community |
| | Bartow, Florida |

## *Professional Appointments:*

| | |
|---|---|
| Bayfront Medical Center | St. Petersburg, Florida |
| Encompass Health Rehab Hospital of Largo | Largo, Florida |
| Kindred Hospital | St. Petersburg, Florida |
| Largo Medical Center | Largo, Florida |
| Northside Hospital | St. Petersburg, Florida |
| Palms of Pasadena Hospital | St. Petersburg, Florida |
| St. Anthony's Hospital | St. Petersburg, Florida |
| St. Petersburg General | St. Petersburg, Florida |
| Windmoor Psychiatric Hospital | Clearwater, Florida |

# *Curriculum Vitae*
## F.E. Saba, M.D.
1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

## *Residency Experience:*

| | |
|---|---|
| July 1996- September 1996 | Primary Care, The Chase- Brexton Health Services |
| | Baltimore, MD |
| July 1995- June 1996 | Chief Resident, Good Samaritan Hospital Health Services |
| | (John Hopkins System) Department of Internal Medicine |
| Oct 1995- June 1996 | Volunteer Staff Physician, The Chase- Brexton health Services |
| | (A medical clinic specializing in HIV Services) |

## *Research Experience:*

| | |
|---|---|
| Dec 2018- Present | SMT19969/C004: A Phase 3, randomized, double-blind, active controlled study to compare the efficacy and safety of ridinilazole (200mg, bid) for 10 days with vancomycin (125mg, qid) for 10 days in the treatment of Clostridium difficile infection (COi) |
| July 2018- Present | M16-100: Testosterone Replacement therapy for assessment of long-term Vascular Events and efficacy response in hypogonadal men (TRAVERSE) study |
| May 2018- Feb 2021 | 17354N: Real- life effectiveness of vortioxetine in patients with major depressive disorder (MDD) and cognitive symptoms. A non-interventional, prospective cohort study to assess real-life effectiveness of vortioxetine in three countries |
| Feb 2018- July 2019 | LixiLan-0: A 26-week randomized, open-label, active-controlled, 2-treatment arm, parallel-group multi-center study, comparing the efficacy and safety of Soliqua 100/33 versus Lantus in ethnically/racially diverse patients with type 2 diabetes mellitus inadequately controlled on basal insulin and oral antidiabetic agent |
| Jan 2018- Oct 2020 | Navigator: A multicenter, randomized, double-blind, placebo controlled, parallel group, phase 3 study to evaluate the efficacy and safety of Tezepelumab in adults and adolescents with severe uncontrolled asthma |

## *Curriculum Vitae*

### F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

| | |
|---|---|
| Jan 2018- March 2021 | SCORED: A randomized, double-blind, placebo-controlled, parallel-group, multicenter study to demonstrate the effects of Sotagliflozin on Cardiovascular and Renal Events in patients with type 2 diabetes, cardiovascular risk factors and moderately impaired renal function |
| Dec 2017- Aug 2018 | Visterra: Phase 2b, Multicenter, randomized, double-blind, controlled study to evaluate the efficacy and safety of Intravenous VIS410 in addition to Oseltamivir (Tamiflu) compared to Oseltamivir alone in hospitalized adults with Influenza A infection requiring oxygen support |
| June 2017- Present | Prominent: Pemafibrate to reduce cardiovascular outcomes by reducing triglycerides in patients with diabetes |
| April 2017- Present | Heart FID: A randomized, double-blind, placebo-controlled study to investigate the efficacy and safety of Injectafer (Ferric Carboxymaltose) as treatment for heart failure with iron deficiency |
| March 2017- July 2018 | Monofer: A phase 3, randomized, open-label, comparative safety and efficacy trial of intravenous iron isomaltoside (Monofer) and iron sucrose in subjects with iron deficiency anemia and non-dialysis dependent chronic kidney disease |
| Feb 2017- Present | Clear Outcomes: A randomized, double-blind, placebo-controlled study to assess the effects of bempedoicadic (ETC-1002) on the occurrence of major cardiovascular events in patients with, or at high risk for, cardiovascular disease who are strain intolerant |
| Aug 2016- Feb 2018 | Cara: A multicenter, randomized, double-blind, placebo-controlled, adaptive design study evaluating the analgesic efficacy and safety of intravenous CR845 in patients undergoing abdominal surgery |
| Aug 2016- Oct 2016 | Merck Pneumonia: A Phase III, randomized, double-blind, active comparator-controlled clinical trial to study the safety, tolerability and efficacy of Imipenem/Cilastatin/Relebactam (MK-7655-A) versus Piperacillin/Tazobactam in subjects with hospital-acquired bacterial pneumonia or ventilator associated bacterial pneumonia |

# *Curriculum Vitae*
## F.E. Saba, M.D.
1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

| | |
|---|---|
| June 2016- Sept 2016 | Artemis: Affordability and real-world antiplatelet treatment effectiveness after myocardial infarction study. A prospective, cluster-randomized study to evaluate whether copayment reduction significantly influences anti-platelet therapy selection and long-term adherence |
| May 2016- July 2018 | Pioneer 4: Efficacy and safety of oral Semaglutide versus Liraglutide and versus Placebo in subjects with type 2 diabetes mellitus |
| Jan 2016- Present | LIRA-PRIME: Efficacy in controlling glycemia with Victoza (liraglutide) as add-on to metformin versus OADs as add-on to metformin after 104 weeks of metformin monotherapy and treated in primary care setting |
| Jan 2016- Nov 2016 | Credence: A randomized, double-blind, event-driven, placebo-controlled, multicenter study of the effects of Canagliflozin on renal and cardiovascular outcomes in subjects with type 2 diabetes mellitus and diabetic neuropathy |
| Oct 2015- June 2018 | Harmony Outcomes: A long term, randomized, double-blind, placebo-controlled study to determine the effect of albiglutide, when added to standard blood glucose lowering therapies, on major cardiovascular events in patients with type 2 diabetes mellitus |
| Aug 2015- June 2016 | A Phase 3 randomized, double-blind, placebo-controlled study to investigate the efficacy and safety of XaraColl Bupivacaine Implant (300mg Bupivacaine Hydrochloride) after open laparotomy hernioplasty |
| June 2015- July 2016 | A Phase 3 randomized, placebo-controlled, blinded study to investigate the safety and efficacy of a topical Gentamicin-Collagen Sponge in combination with systemic antibiotic therapy in diabetic patients with an infected foot ulcer |
| April 2015- May 2016 | Open-label Phase III clinical trial to evaluate the safety of 0.03% DSC 127 gel in chronic use for treating diabetic foot ulcers ("DFU") |
| March 2015- Oct 2018 | REDUCE-IT (Reduction of Cardiovascular Events with EPA-Intervention Trial): A multi-center, prospective, randomized, double-blind, placebo-controlled, parallel group study to evaluate the effect of AMR 101 on cardiovascular health and mortality in hypertriglyceridemic patients with cardiovascular disease or at high risk for cardiovascular disease |

# *Curriculum Vitae*
## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

| | |
|---|---|
| Jan 2015- April 2016 | Portola: Multicenter, randomized, active-controlled efficacy and safety study comparing extended duration Betrixaban with standard of care Enoxaparin for the prevention of venous thrombosis in acute medically ill patients |
| Nov 2014- April 2015 | Multag: Real world study evaluating Dronedarone treatment patterns and outcomes in patients with atrial fibrillation: Wave 2 |
| Sept 2014- May 2018 | Carmelina: A Multicenter, international, randomized, parallel group, double-blind, placebo-controlled cardiovascular safety and renal micro vascular outcome study with linagliptin 5mg once daily in patients with type 2 diabetes mellitus at high vascular risk |
| July 2014- June 2018 | Camellia: A randomized, double-blind, placebo-controlled, parallel-group study to evaluate the effect of long-term treatment with BEL VIQ (lorcaserin HCl) on the incidence of major adverse cardiovascular events and conversion to type 2 diabetes mellitus in obese and overweight subjects with cardiovascular disease or multiple cardiovascular risk factors |
| July 2014- May 2018 | Galathea: A randomized, double-blind, chronic dosing (56 week) placebo-controlled, parallel group, multicenter, Phase III study to evaluate the efficacy and safety of 2 dose of Benralizumab (MEDI-563) in patients with moderate to very severe chronic obstructive pulmonary disease (COPD) with a history of COPD exacerbations |
| May 2014- Aug 2018 | CDiffense: Efficacy, immunogenicity and safety study of Clostridium difficile toxoid vaccine in subjects at risk for c. difficile infection |
| Feb 2014- May 2016 | STRIDE 1: A randomized, double-blind, parallel-group, vehicle-controlled Phase 3 clinic trials to evaluate the efficacy and safety of DSC127 in treating non-healing foot ulcers in subjects with diabetes mellitus |
| Jan 2014- June 2018 | SONAR (Study of Diabetic Nephropathy with Altrasentan): A randomized, multicounty, multicenter, double-blind, parallel, placebo-controlled study of the effects of Atrasentan on renal outcomes in subjects with type 2 diabetes and nephropathy |

# *Curriculum Vitae*

## F.E. Saba, M.D.

1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

| | |
|---|---|
| Dec 2013- Dec 2017 | Ascent: double-blind, randomized, placebo-controlled, parallel-group, Phase IV study to evaluate the effect of Aclidinum, Bromide on long-term cardiovascular safety and COPD exacerbations in patients with moderate to very severe COPD |
| Dec 2013- Dec 2015 | An evaluation of tissue engineering approaches for treatment of neuropathic disease foot ulcers resistant to standard of care: a prospective, randomized, controlled trial |
| Sept 2013- Dec 2018 | DECLARE (Dapagliflozin Effect on Cardiovascular Events): A multicenter, randomized, double-blinded controlled trial to evaluate the effect of Dapagliflozin 10mg once daily on the incidence of cardiovascular death, myocardial infarction or ischemic stroke in patients with type 2 diabetes |
| Oct 2012- May 2014 | A multi-center, randomized, double-blind, placebo controlled Phase 3 study to evaluate cardiovascular outcomes of TAK-875, 50mg in addition to standard of care in subjects with type 2 diabetes and with cardiovascular disease or multiple risk factors for cardiovascular events |
| Oct 2010- Dec 2014 | SOLID TIMI: A clinical outcome study of Darapladib versus placebo in subjects following acute coronary syndrome to compare the incidence of major adverse cardiovascular events (MACE) |
| June 2010- May 2013 | SAVOR (Saxagliptin Assessment of Vascular Outcomes recorded in patients with diabetes mellitus): A multicenter, randomized, double-blind, placebo-controlled Phase IV trial to evaluate the effect of Saxagliptin on the incidence of cardiovascular death, myocardial infarction or ischemic stroke in patients with type 2 diabetes |
| Nov 2006- Sept 2010 | ROCKET: A prospective, randomized, double-blind dummy, parallel group, multi-center, event driven, non-inferiority study comparing the efficacy and safety of once daily oral Rivaroxaban (BAY 597939) with adjusted dose oral warfarin for the prevention of stroke and non-central nervous system systemic embolism in subjects with non-valvular atrial fibrillation |
| Oct 2006- May 2008 | PLATO: A randomized, double-blind, parallel group, Phase 3, efficacy and safety study of AZD6140 compared with Clopidogrel for prevention of vascular events in patients with NonST Elevation acute coronary syndromes (ACS) |

# *Curriculum Vitae*
## F.E. Saba, M.D.
1839 Central Avenue, St. Petersburg, FL 33713
Office: 727-210-8402 Mobile: 727-804-3267 Fax: 727-822-8081
fsaba@excellent-experts.com

| | |
|---|---|
| Sept 2006- Sept 2009 | Avant-Garde TIMI 43: A randomized, double-blind, parallel group, placebo controlled, multination clinical trial to evaluate the efficacy of Aliskiren and Valstratan vs placebo in lowering levels on NT proB NP in stabilized patients post-acute coronary syndrome |
| Oct 2005- Dec 2014 | Improve-IT: A multi-center, double-blind, randomized study to establish the clinical benefit and safety of Vytorin vs Simvastatin in high-risk subjects presenting with acute coronary syndrome |

## *Publications:*

1. Moukaddem, N., Saba, F., Corkum, J.: "Cryptogenic Lactic Acidosis, a Case Report."
2. Saba, F., Moukaddem, N.: "Electroencephalography in the Evaluation of Patients with Change in Mental Status." An abstract present to the American College of Physicians May 1995.
3. Pearse, D., Saba, F., Katanidou, A., Permutt, S., Warner, E.: "Ventilation Prevents Ischemic Injury by a Nitric Oxide Independent Mechanism in Isolated Sheep Lungs." An abstract presented to the American Thoracic Society May 1995
4. Saba, F., Black, K., Dritsas, S., Selinger, S.: "Risk of Deep Venous Thrombosis with Femoral Venous Catheterization." An abstract presented to the American Thoracic Society meeting, May 1996

## *Speaking Engagements:*

2002- Present

Pfizer Pharmaceuticals- Topics: Zyvox, Aricept, Lyrica, Viagra

2008- Present

Cubist Pharmaceuticals- Topic: Cubicin

2007- 2010

Forest Pharmaceuticals- Systolic- Ditropan